Thomas **HOWARD** and Margaret **Howard, Plaintiffs,**

v.

Donald L. **ADLE,** a/k/a **Dudley Adle,** and United States **of America, Department of Treasury, Internal Revenue Service, Defendants.**

**Civ. No. 80–74444.**

United States District Court, E. D. Michigan, S. D.

Jan. 13, 1982.

Alan M. Valade, Valade, MacKinnon & Higgins, Detroit, Mich., for plaintiffs.

Leonard R. Gilman, U. S. Atty., Detroit, Mich., Ronald F. Fischer, Tax Div., Dept. of Justice, Washington, D. C., for IRS.

Charles A. Murphy, Southfield, Mich., for Adle.

1. "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."

2. "Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter (1) to

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

This is an action seeking to set aside a federal tax sale of a parcel of real estate on the grounds that (1) the notices of seizure and sale were defective, and (2) plaintiffs properly redeemed following the sale. Defendants are the purchasers at the tax sale, Donald Adle, and the United States in the person of the Internal Revenue Service (IRS). Jurisdiction is based on 28 U.S.C. § 1340 [1] and 28 U.S.C. § 2410(a).[2] Before the Court are cross motions for summary judgment by plaintiffs and the United States.

### I.

The following facts are uncontroverted.

### A.

In 1972 plaintiffs purchased on land contract the parcel in question: a house and lot in Redford Township, Michigan. Prior to the seizure and sale involved in this case the parcel was seized and sold in 1979 for unpaid federal income taxes; however, plaintiffs redeemed on the final day of the redemption period.

On March 26, 1980 the parcel was again seized for unpaid federal income taxes. Notice of the seizure was personally served on plaintiffs' daughter at their residence [3] and mailed to plaintiff Thomas Howard's office. Notice that the property would be sold on May 22, 1980 was mailed to plaintiffs' residence and to Thomas Howard's office May 8, 1980. The May 22 sale went

quiet title to ... real property on which the United States has or claims a mortgage or other lien". See *Aqua Bar & Lounge v. U. S. Dept. of Treasury*, 539 F.2d 935 (3rd Cir. 1976).

3. United States' Request for Admissions to Plaintiffs (Admissions), No. 1. The request was served on July 7, 1981 and has not been answered or objected to. Plaintiffs have not moved to withdraw or amend the admissions, despite defendant's reliance on them in moving for summary judgment; nor have they denied the underlying facts. See Fed.R.Civ.P. 36.

forward but was subsequently declared void when the high bidder failed to tender the full bid price.

Thereafter, notice of a June 16, 1980 sale date was sent by certified mail on June 3, 1980 to plaintiffs' residence and Thomas Howard's office. The notice sent to Thomas Howard's office was received June 4, 1980; however the notice to plaintiffs' residence was returned unclaimed after several attempts at delivery. Plaintiffs had actual prior notice of the June 16, 1980 sale.[4] On June 16 the parcel was sold to defendant Donald L. Adle, the vendor under the land contract on the parcel.

### B.

In a letter dated September 30, 1980, the Detroit District Director of the IRS notified plaintiffs of the sale and their right to redeem. The letter contained the following statement:

"Under Section 6337 of the Internal Revenue Code, as amended by the Federal Tax Lien Act of 1966, you have 120 days within which to redeem the property. The redemption period expires on the above date."

The "above date" appearing at the letter's heading was October 15, 1980. On October 15 a Nick Zaika appeared at the Dearborn, Michigan IRS office and tendered a cashier's check payable to defendant Adle to redeem the parcel. On November 13, 1980 the IRS returned the check to plaintiffs with an explanation that the September 30 letter incorrectly stated that October 15, 1980 was the last day of the 120 day statutory redemption period but in fact the 120th and final day was October 14, 1980.

### C.

On November 16, 1980 the IRS executed a deed of the parcel to defendant Adle. This action was filed November 25, 1980.

4. Admissions, No. 7.

### II.

### A.

The Internal Revenue Code requirements for notice of seizure and sale of property are as follows:

"(a) Notice of seizure.—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized and, in the case of real property, a description with reasonable certainty of the property seized.

(b) Notice of sale.—The Secretary or his delegate shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made, or if there be no newspaper published or generally circulated in such county, shall post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof. Whenever levy is made without regard to the 10-day period provided in section 6331(a), public notice of sale of the property seized shall not be made within such 10-day period unless section

6336 (relating to sale of perishable goods) is applicable.

26 U.S.C. § 6335(a), (b).

### B.

On October 5, 1981 the Court ruled that notice of the seizure was properly given.[5]

No claim is made that the IRS failed to comply with the publication and posting requirements for the notice of sale. Plaintiffs' sole complaint is that the notice of the June 16, 1980 sale was neither "given" to them nor "left" at their place of abode or business.

### C.

The United States admits that it was required to provide notice of sale to plaintiffs in compliance with the first sentence of § 6335(a), but argues that the statutory language includes certified mailing. It reasons that notice of sale *was* left at Howard's usual place of business, albeit by a postal rather than an IRS employee. This is simply an implausible reading of the statute.

■ Notice must be given by "the Secretary or his delegate". The Secretary, of course, is the Secretary of the Treasury; "or his delegate" means:

"any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more re-delegations of authority, to perform the function mentioned or described in the context."

26 U.S.C. § 7701(a)(12)(A)(i). An employee of another executive department, such as the Post Office, does not meet the definition of "delegate".[6] That Congress did not contemplate that mailing was synonymous with "giving" notice to an owner or "leaving" it at his home or business is apparent from the second sentence of § 6335(a).

Where the owner cannot be readily located or has no dwelling or business in the district, the notice "may be mailed to his last known address". The United States argues that the only difference between the first and second sentence is that the latter permits mailing to "the last known address" rather than to the usual place of abode or business. Had Congress so intended, surely it would have used the word "mailed" in both sentences, rather than requiring that notice be "left" by the Secretary or his delegate in the first sentence.

The IRS itself has, by regulation, interpreted § 6335 to require delivery of the notice rather than mailing unless the owner cannot be readily located or has no place of abode or business in the district.

"As soon as practicable after seizure of the property, the district director shall give notice of sale in writing to the owner. Such notice shall be delivered to the owner or left at his usual place of abode or business if located within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address."

26 C.F.R. § 301.6335–1(b)(1) (1981). The internal operations manual of the IRS is even more specific:

"The original notice [of sale] will be delivered to the taxpayer personally. If personal service has been attempted but could not be accomplished, the notice will be sent by Certified Mail, Return Receipt Requested to the taxpayer's last known address."

Internal Revenue Manual § 5356.1(2) (1980). The United States does not claim that it attempted to serve the notice of sale personally or that plaintiffs could not be readily located within the district.

---

5. Plaintiffs had argued that Thomas Howard was separated from Margaret Howard, his wife, at the time the notice of seizure was left at the residence occupied by Margaret Howard, and therefore Thomas Howard was not properly served at *his* place of abode. This argument was foreclosed by Admissions No. 1, that both plaintiffs resided at the address in question during the relevant period.

6. The statute does provide that in Guam and American Samoa "delegate" may include an officer or employee of any other federal agency duly authorized by the Secretary. 26 U.S.C. § 7701(a)(12)(B).

### D.

■ The Court's inquiry, however, does not end with the finding that notice of sale was not made in literal compliance with the statute. This is, in essence, an action to quiet title. Because plaintiffs seek equitable relief, they must show that they themselves have done equity. *McAndrews v. Belknap*, 141 F.2d 111, 115 (6th Cir. 1944); *Johnson v. Gartlan*, 470 F.2d 1104, 1106 (4th Cir. 1973). Because the parcel is located in Michigan, Michigan law applies. *McAndrews, supra; see also* 28 U.S.C. § 2410(c).[7]

The general rule in Michigan is:

"Where . . . a serious defect occurs in the tax sale, it may be attacked by the owner of the premises, provided he acts promptly and does equity."

*Detroit Trust Co. v. Lieberwitz*, 275 Mich. 429, 436, 266 N.W. 406 (1936). *See also Simasko v. Township of Harrison*, 15 Mich. App. 534, 166 N.W.2d 635 (1969).

In *Blondin v. Griffin*, 133 Mich. 647, 95 N.W. 739 (1903), the Michigan Supreme Court declined to set aside a technically defective tax sale because of the owner's failure to act promptly on facts strikingly similar to this case.

"[Petitioner] knew that his taxes were unpaid, and that proceedings were instituted in 1901 for the sale of his land. The county treasurer had written him of the pendency of the suit, and that his land would be sold unless his taxes were paid. To this he paid no attention, did not appear in the suit, or even at the sale, to make protest. Nearly three months after the sale and after confirmation he applies to the court to have the sale set aside for the reason that the action of the auditor general in setting aside the [prior] sales in 1895 and 1896 is invalid . . . . Petitioner was entitled to redeem from this sale by complying with Act No. 229, Pub. Acts 1897. Instead of complying with this statute, he chose to resort to

this suit. We think his conduct estops him from now insisting upon this irregularity of the auditor general."

133 Mich. at 648, 95 N.W. 739.

In equity there is, of course, no absolute rule as to what period of delay will bar relief; each case must be determined according to its own peculiar circumstances. *Hoehn v. Crews*, 144 F.2d 665, 671 (10th Cir. 1944). Here three factors lead the Court to conclude that plaintiffs failed to act with sufficient promptness. First, plaintiffs had actual notice prior to the sale. Second, Thomas Howard is an attorney and thus particularly able to appreciate the nature of the defect in a notice and the need to act swiftly to set aside a sale. Finally, virtually the identical scenario was acted out the previous year, the only difference being that plaintiffs tendered the redemption amount on the statutory deadline in 1979 rather than being a day late as they were in 1980.

Plaintiffs did not notify either the IRS or defendant Adle during the 120 day redemption period that they considered the sale invalid. Indeed, their attempt to redeem at the last moment suggests they considered the sale valid. *Cf. Johnson, supra* (taxpayer ratified technically invalid sale by accepting excess proceeds of sale). Only after the IRS deeded the property to defendant Adle did plaintiffs raise a claim of invalidity by the filing of this action.

### E.

Plaintiffs rely on two cases for the principle that a tax sale should be set aside for failure to comply with the notice requirements of § 6335. *Reece v. Scoggins*, 506 F.2d 967 (5th Cir. 1975) and *Aqua Bar & Lounge, Inc. v. United States*, 438 F.Supp. 655 (E.D.Pa.1977).

The Court finds these cases distinguishable for at least two reasons. First, both cases proceeded directly from the finding that noncompliance with the notice of sale

---

**7.** This statute, which confers jurisdiction over the United States as a defendant in a quiet title action, thus waiving sovereign immunity, provides:

"A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated."

requirements renders the sale *voidable* to holding the sale void without considering whether or not the taxpayer was entitled to equitable relief under the applicable state law.

Second, in neither case did the undisputed facts show that the taxpayer received prior written notice of the sale. In *Reece* not only was there no personal service, but notice of the sale was not mailed in time to be delivered prior to the sale date, and no notice of the adjourned sale date was mailed. Thus there was a substantial issue whether the taxpayer had been given "an opportunity to be present at the tax sale and bid on the property", the central purpose of the statutory notice requirements. 506 F.2d at 971. The court in *Aqua Bar* refused to speculate as to whether mailed notice of sale had actually reached the taxpayer because the "purpose of requiring a particular method of giving notice is to prevent disputes over whether notice was received". 438 F.Supp. at 657. Here there is no dispute: plaintiffs received prior written notice. There is no claim that they were denied the opportunity to be present at the sale.

### III.

Plaintiffs also argue that even if the tax sale is not void, the attempted redemption on October 15, 1980 should be honored. The statute provides in relevant part:

"*Redemption of real estate after sale.* —(1) *Period.*—The owners of any real property sold as provided in section 6335 ... shall be permitted to redeem the property sold ... at any time within 120 days after the sale thereof.

(2) *Price.*—Such property ... shall be permitted to be redeemed upon payment to the purchaser, or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary or his delegate ... the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum."

26 U.S.C. § 6337(b).

 The expiration date of the redemption period is calculated by including

the date of sale. *Ballard v. United States*, 67–2 USTC ¶ 9652 (D.Colo.1967); *Guthrie v. Curnutt*, 417 F.2d 764 (10th Cir. 1969). This Court simply lacks the power to extend the statutory period, even for powerful equitable considerations. *Anselmo v. James*, 449 F.Supp. 922, 926 (D.Mass.1978) (redemption four days late because travel restricted by state of emergency declared due to blizzard); *Keely v. Sanders*, 99 U.S. 441, 445–46, 25 L.Ed. 327 (1878) (citing with approval *Finley v. Brown*, 22 Iowa 538 (1867), which held that right to redeem could not be extended even though owner resided in a Confederate state during the Civil War). The application of the rule here is less troubling inasmuch as plaintiffs were familiar with the procedure for redemption having redeemed the same parcel in 1979 on the 120th day.

### IV.

Accordingly, for the reasons herein stated, plaintiffs' motion for summary judgment is DENIED and the United States' motion for summary judgment is GRANTED.

SO ORDERED.